## MURRAY HOSPITAL v. RASMUSSEN, Collector of Internal Revenue.

Circuit Court of Appeals, Ninth Circuit.
June 13, 1927.

No. 5055.

**Internal revenue ⬳38(11)—Complaint held to state cause of action for recovery of tax paid on sum disbursed in settlement of vexatious litigation.**

Complaint, in action by a corporation against a collector, alleging disallowance as deduction from income, for a tax year of a sum paid in compromise and settlement of claims made and suits pending against the corporation, *held* to state a cause of action for recovery of the tax paid on such sum.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action at law by the Murray Hospital, a corporation, against C. A. Rasmussen, Collector of Internal Revenue. Judgment for defendant and plaintiff brings error. Reversed.

The amended complaint in this case sets forth substantially the following facts: The plaintiff is a corporation organized and existing under the laws of the state of Montana, and maintains and conducts a hospital at Butte in that state. The defendant is collector of internal revenue for the district of Montana. The capital stock of the plaintiff corporation is divided into 2,500 shares of the par value of $100 each. The articles of incorporation provide that shares shall only be issued and sold to physicians who are or shall become members of the hospital staff of physicians and surgeons, and that such physicians shall only be entitled to hold and possess the shares and receive dividends thereon during such time as they shall remain members of the staff and devote their entire time, energy, and skill to the practice of medicine in behalf of the corporation, paying to the corporation the gross amount of their earnings. The shares are issued and sold subject to these conditions, are not negotiable or subject to the debts of the holders, and cannot be taken in execution against them. Upon the failure of the holders to perform services for the corporation as members of its staff, or upon the severance of their relations with the corporation, the stock reverts to the corporation.

In the year 1918, 1,500 shares of the capital stock were issued and outstanding, 428 of which were owned by Dr. T. J. Murray, the president of the corporation. The hospital contained 60 rooms and 2 wards, with a capacity for caring for an average of 92

patients. It employed 35 nurses, and had a staff consisting of the president and four other physicians, who devote their time, skill, and attention to the treatment of patients received at the hospital. The hospital building was lighted by electricity, and the Granite-Alaska Company furnished the steam heat and hot water and performed all laundry service. Late in the year 1917, dissentions arose between Murray and the other physicians and surgeons over the management of the hospital, and litigation and threatened litigation was the result. In February, 1918, the Granite-Alaska Company, of which Murray was president and majority stockholder, commenced an action in a state court of Montana against the plaintiff to recover the sum of $4,075.71 for services alleged to have been performed in the collection of accounts due from patients in the hospital. At that time an agreement existed between the Granite-Alaska Company and the plaintiff, whereby the former agreed to provide heat and hot water to the hospital throughout the year, and about February 1 the Granite-Alaska Company notified the plaintiff that from and after that date it would charge the sum of $100 per day for furnishing the steam heat and supplying the hot water. At the time this notice was given the weather was intensely cold at Butte, and the plaintiff had no other means of any kind or character for supplying the steam heat or supplying the hot water, and the hospital was then filled with patients to its capacity.

Prior to February 1, 1918, the plaintiff, through some of its directors, obtained an option on certain property immediately in the rear of the hospital building, and had commenced to remodel the same for the purpose of housing the nurses employed in the hospital. The congested condition of the hospital was such that this addition became absolutely necessary. The electric wiring in the hospital building was also in a defective and dangerous condition, and it became necessary for the safety of the patients to repair the wiring. Such repairs had been ordered by the city electrician of Butte. On February 9, 1918, Murray, as a stockholder, commenced a suit in the state court against the plaintiff and its directors, charging the directors with mismanagement of the affairs of the corporation, with paying out salaries contrary to stipulations and agreements between stockholders, with extravagance and waste, with the purchase of the building for the accommodation of nurses at an excessive and exhorbitant price, with entering into an improper agreement for the wiring of the build-

ing, and with doing the wiring in a careless and negligent manner, and asked for the appointment of a receiver and for an injunction. At the same time, Murray threatened to bring suit to recover certain apparatus in and about the hospital and to remove the same, threatened to discontinue the heating of the hospital, threatened to bring other suits of various kinds and character, and threatened to harass the plaintiff in various other ways. If the litigation were permitted to continue, it would work great harm and irreparable injury to the plaintiff; the physicians and surgeons on the staff, and the nurses employed in the hospital would discontinue their services; damage suits would be brought by patients to recover for injuries caused by lack of heat; and the final dissolution of the plaintiff and bankruptcy would result. Murray accused other officers and directors of the plaintiff of misappropriating funds and of misconduct and carelessness in the discharge of their duties in the treatment of patients. Murray at all times exercised a dominant influence over the plaintiff through his stock ownership and through his control over the Granite-Alaska Company. The complaint then averred:

"That a real and substantial controversy did thereupon exist between the said Dr. T. J. Murray and the plaintiff herein, whereupon the plaintiff, Murray Hospital, and its attorneys on one side, and Dr. T. J. Murray and his attorneys representing him entered into negotiations extending over a period of about six weeks, and which had for its object and purpose a settlement of the controversies so existing between the parties. That a settlement was agreed to and made, whereby the said Dr. T. J. Murray agreed to accept and the plaintiff herein, Murray Hospital, agreed to pay to him the sum of $57,200 as full compensation for the existing controversies between the said Dr. T. J. Murray and the said Murray Hospital, which said sum was then and there a reasonable sum and was paid by the said Murray Hospital to him the said Dr. T. J. Murray from its gross income for the calendar year, 1918.

"That the said agreement also provided for the payment to the said Dr. T. J. Murray of the sum of $42,800, or $100 per share for the 428 shares of the capital stock so as aforesaid held by the said Dr. T. J. Murray as a stockholder of the said Murray Hospital; the said par value being the value fixed by the by-laws of the said corporation as the purchase and sale price of the shares thereof, and did thereupon pay to the said Dr. T. J. Murray, the said sum of $42,800.

"That the payment of said $57,200 to the said Dr. T. J. Murray from the gross income of the said Murray Hospital for said year 1918 was an ordinary and necessary expense paid and incurred during said taxable year in carrying on its trade and business of hospital, and this plaintiff alleges that by reason of the facts hereinabove set forth the said payment was reasonable and necessary to enable it to carry on its trade and business of hospital, and this plaintiff alleges that, by reason of the facts hereinabove set forth, the said payment was reasonable and necessary to enable it to carry on its said business, and the payment thereof did enable the plaintiff herein to successfully carry on its business thereafter.

"That the said sum of $57,200 from the gross income of the plaintiff for the year 1918 was claimed as a deduction by plaintiff in its returns for said fiscal year as hereinbefore set forth.

"Plaintiff further alleges that the said sum of $57,200 was a loss sustained by it during the taxable year of 1918 and not compensated for by insurance or otherwise, and was incurred in its trade and business of operating, running, and conducting a hospital for profit and in the operation of its said business regularly carried on during said taxable year by this plaintiff."

It was lastly averred that, notwithstanding the premises, the Commissioner of Internal Revenue assessed and taxed the plaintiff on this sum of $57,200, in addition to the amount of the tax paid by the plaintiff on its return for the year 1918, that the additional tax was paid under protest, and that a demand for a refund was made and refused. A general demurrer was interposed to the amended complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and a judgment of dismissal followed. That judgment is now before us for review on writ of error.

Walker & Walker and C. S. Wagner, all of Butte, Mont., for plaintiff in error.

Wellington D. Rankin, U. S. Atty., and L. V. Ketter, Asst. U. S. Atty., both of Helena, Mont., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). The right of the plaintiff in error to deduct from its gross income losses sustained during the taxable year, not compensated for by insurance or otherwise, is apparently not controverted, so that we are only concerned with the single question, whether the amended complaint shows any such losses. It is there directly averred that the plaintiff in error paid Murray within the taxable year the sum of $100,000, that $42,800 of this amount was paid for stock held by Murray in the corporation, and that the balance was paid by way of settlement and compromise of the various claims and demands set forth in the amended complaint. Speaking generally, these were: The claim of the Granite-Alaska Company involved in the suit pending in the state court; the controversy with the same company over the contract to furnish steam heat and hot water for the hospital building; the settlement of the stockholder suit brought by Murray for an injunction and the appointment of a receiver; the settlement of the threatened suit to recover certain apparatus in the hospital; and other threatened litigation, the nature of which is not disclosed.

The demurrer was apparently sustained on the ground that this was "a suit over property rights, settled, bought, and paid for." But we do not think that this is a fair or reasonable construction of the pleading. By the settlement and compromise, the plaintiff in error acquired neither property nor property rights, unless it be said that it may have acquired something through the settlement of the claim made by Murray to the apparatus in the hospital. Aside from this, it acquired nothing, so far as we can discover, except freedom from turmoil and strife. It may be that the facts are not fully or correctly set forth, and it may be that the plaintiff in error will encounter insurmountable difficulties in making out a case, but with these questions we are not now concerned. We think there is sufficient in the complaint to call for an answer, to the end that the case may be heard on the merits.

Reversed.